IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**AMANDA IRENE SMITH,**

    Defendant.

No. 3:21-cr-00553-MWM

**OPINION AND ORDER**

**MOSMAN, J.,**

This matter comes before me on Defendant Amanda Irene Smith's Motion for Judgment of Acquittal and New Trial and Motion for Dismissal for Lack of Subject Matter Jurisdiction [ECF 194]. The government responded to this motion on October 11, 2023 [ECF 207]. Ms. Smith did not file a Reply. For the following reasons, I DENY the Motion for Dismissal, DENY the Rule 29 Motion for Judgment of Acquittal, and DENY the Rule 33 Motion for New Trial.

### BACKGROUND

Defendant Smith is a non-native woman and her co-defendant Joel Richard Smith is her husband and a tribal member of a federally recognized tribe. Def.'s Mot. [ECF 194] at 1. From 2014 to April 2019, Ms. Smith and her husband physically abused and neglected H.M. Pl.'s Resp. [ECF 207] at 1. H.M. is a member of a federally recognized tribe. Def.'s Mot. [ECF 194] at 17. A federal grand jury returned a superseding indictment charging Smith with Child Abuse in Indian

1 – OPINION AND ORDER

Country and Child Neglect in Indian Country, counts three and four. *Id.*; Superseding Indictment [ECF 85]. The superseding indictment charged Ms. Smith's co-defendant with the same crimes, counts one and two, "as aided and abetted" by Ms. Smith. Superseding Indictment [ECF 85] at 1–2. After a four-day trial, the jury convicted Ms. Smith of both child abuse and child neglect. Jury Verdict [ECF 188]. Ms. Smith brought this Motion seeking judgment of acquittal, dismissal for lack of subject matter jurisdiction, and/or a new trial.

## DISCUSSION

I. **Motion for Dismissal for Lack of Subject Matter Jurisdiction**

   A. **Jurisdiction to Prosecute Crimes Committed by Non-Indians Against Indians in Indian Country**

Ms. Smith argues that after the Supreme Court's decision *Oklahoma v. Castro-Huerta*, __ U.S. __, 142 S. Ct. 2486 (2022), federal courts now lack jurisdiction over criminal cases involving crimes committed in Indian country by non-Indians. Def.'s Mot. [ECF 194] at 2. In *Castro-Huerta*, the issue before the Court was whether Oklahoma had jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country. 142 S. Ct. at 2492. The Supreme Court held that the federal government and the states have concurrent jurisdiction to prosecute such crimes. *Id.*

Federal law defines "Indian country" to include, among other things, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151. The General Crimes Act grants the federal government jurisdiction to prosecute crimes in Indian country. 18 U.S.C. § 1152. It extends the federal laws that apply on federal enclaves to Indian country. *Id.*, *see also Castro-Huerta*, 142 S. Ct. at 2489. The Assimilative Crimes Act incorporates local state law into federal law and applies that law to federal enclaves within the states. 18 U.S.C. § 13; *Iowa Tribe of Indians of Kansas & Nebraska v. State of Kansas*, 787 F.2d 1434, 1437 n.2 (10th Cir. 1986). The Assimilative Crimes Act is applied to Indian country through

2 – OPINION AND ORDER

the General Crimes Act. *Iowa Tribe*, 787 F.2d at 1437 n.2 (citing *Williams v. United States*, 327 U.S. 711, at 713–14 (1946)).

Ms. Smith's first error is misconstruing the General Crimes Act. The relevant portion of the Act reads as follows:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

18 U.S.C. § 1152. Ms. Smith argues that a "plain reading of the statute" reveals that the federal government may only charge a non-Indian with a "state offense" when it has "sole and exclusive jurisdiction" over the offense. Def.'s Mot. [ECF 194] at 5. Ms. Smith's interpretation is incorrect: the Act extends the law of federal enclaves to Indian country; it does not make jurisdiction conditional on whether the federal government has exclusive jurisdiction.

Ms. Smith next argues that the Assimilative Crimes Act is not a valid source of federal jurisdiction either. The relevant portion of the Act reads as follows:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Ms. Smith interprets the Act to mean that the federal government may only assimilate state crimes against defendants when the state does not have jurisdiction. Def.'s Mot. [ECF 194] at 5. But this subsection does not limit the Act to areas "not within the Jurisdiction of any State"; rather, it applies the Act first to places defined in 18 U.S.C. § 7, and then to places

3 – OPINION AND ORDER

above and below "the territorial sea of the United States not within the jurisdiction of any State." *Id.*

Courts have established that the Assimilative Crimes Act applies to Indian country through the General Crimes Act. *Iowa Tribe*, 787 F.2d at 1437 n.2 (citing *Williams*, 327 U.S. at 713–14). The Supreme Court does not mention the Assimilative Crimes Act in *Castro-Huerta*. 142 S. Ct. 2486. There is no indication that *Castro-Huerta* abrogates the application of the Assimilative Crimes Act to Indian country. The Supreme Court declared that "[a]ll agree that the Federal Government has jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." *Id.* at 2492. The Court clearly did not intend to alter this rule.

### B. Aiding and Abetting an Indian Defendant

Ms. Smith argues that as a non-Indian, she cannot "aid and abet" an Indian defendant in Indian country under a statute that has no jurisdiction over non-Indians. Def.'s Mot. [ECF 194] at 8. Ms. Smith is mentioned in counts one and two as an aider and abettor to her co-defendant under 18 U.S.C. § 2. Superseding Indictment [ECF 85]. She argues that 18 U.S.C. § 1153 offenses are reserved only for Indian defendants and 18 U.S.C. § 2 does not extend federal jurisdiction to a non-Indian alleged accomplice. Def.'s Mot [ECF 194] at 8.

I addressed this issue at trial. Trial Tr. [ECF 201] at 716–17. There is a well-established principle that one can aid and abet in the commission of a crime that they are unable to commit. *See United States v. Mann*, 811 F.2d 495, 497 (9th Cir. 1987) ("A jury may find a person guilty of aiding and abetting even though [they] did not commit all the acts constituting the elements of the substantive crime charged."). While this principle usually applies in cases where an aider/abettor is factually unable to commit a crime, I determined that the principle applies equally where an individual is legally unable to commit the crime. Therefore, I denied Ms. Smith's motion. Here,

4 – OPINION AND ORDER

Ms. Smith does not offer more or different authority on this issue, so there is no reason to rule differently, nor are there grounds to reconsider the issue.

### C. Jury Instructions on Rule for "Aider and Abettor" Offenses

Ms. Smith argues that it was error to instruct the jury on aiding and abetting because the verdict form only provided the option of determining each defendant's guilt as to the substantive counts. Def.'s Mot. [ECF 194] at 9–10. Ms. Smith acknowledges that she did not raise an objection to the jury instructions at trial. *Id.*

This motion is not the appropriate vehicle for Ms. Smith's argument. A litigant may ask a court to review a jury instruction for plain error upon appeal, but it does not make sense to ask this court to do so in the form of a motion to dismiss. None of the authorities cited by Ms. Smith include examples of an objection to a jury instruction made to the trial court after the trial. *See United States v. Teague*, 443 F.3d 1310, 1311 (10th Cir. 2006) (appeal of 18 U.S.C. § 875(c) conviction); *United States v. Dominguez Benitez*, 542 U.S. 74 (2004) (appeal following district court's failure to warn as instructed by Fed. R. Crim. P. 11(c)(3)(B)); *United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005) (appeal of wire fraud conviction). Additionally, FRCrP 30 clearly contemplates the application of the plain error standard upon appeal, not upon a motion for dismissal. Fed. R. Crim. P. 30(d) ("Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).").

In summary, I deny Ms. Smith's Motion for Dismissal because federal courts have jurisdiction to prosecute offenses committed by non-Indians against Indians in Indian country, I previously ruled that a non-Indian may be charged with aiding and abetting a crime charged under 18 U.S.C. § 1153, and an objection to the jury instructions is not properly before this court.

II. **Motion for Judgment of Acquittal**

A defendant may move for judgment of acquittal within fourteen days after a guilty verdict or after the court discharges the jury, whichever is later. Fed. R. Crim. P. 29(c)(1). This motion allows a court to set aside a guilty verdict and enter an acquittal. Fed. R. Crim. P. 29(c)(2). The relevant inquiry is "whether the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Judgment of acquittal is only appropriate when, taking all the evidence together with reasonable inferences in the light most favorable to the government, a reasonable jury could not find the defendant guilty beyond a reasonable doubt. *United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006).

Ms. Smith moved for judgment of acquittal at trial upon the conclusion of the government's case. Trial Tr. [ECF 201] at 661. She argued that the government did not produce any evidence to establish the element of malice in the child abuse charge. *Id.* I denied this motion. *Id.* Here, Ms. Smith again requests this Court to set aside her child abuse conviction and enter a judgment of acquittal because there was insufficient evidence that she committed child abuse. Def.'s Mot. [ECF 194] at 12.

The elements of the offense of child abuse are (1) willfully or maliciously (2) injuring or torturing (3) a child under the age of eighteen. 21 O.S. §§ 843.5(A), (O). Ms. Smith argues that the only evidence presented by the government regarding her physical conduct came from H.M., "who testified that [Ms. Smith] had spanked her a single time." Def.'s Mot. [ECF 194] at 12. Ms. Smith argues that no evidence was presented that this was done "maliciously," nor was there evidence that H.M. was "injured" or "tortured" by her actions. *Id.* The government responds that it presented ample evidence on this charge, including further testimony from H.M., photographs, and expert testimony. Pl.'s Resp. [ECF 207] at 8–9.

6 – OPINION AND ORDER

I find that the government presented sufficient evidence to support Ms. Smith's conviction. *See, e.g.*, Trial Tr. [ECF 201] at 506 (discussing government's exhibit 49 with child abuse pediatrician); *id.* at 610 (testimony by H.M. regarding incident in which Ms. Smith hit her repeatedly with a broom). I therefore deny this motion.

### III.     Rule 33 Motion for New Trial

Ms. Smith raises four bases for granting her Rule 33 Motion, most concerning alleged *Brady* violations, which I will address in turn. Def.'s Mot. [ECF 194] at 12–20. The government responds that none of these justify granting Ms. Smith's motion either because the prosecution did not suppress the evidence or because it was not material. Pl.'s Resp. [ECF 207] at 10–14.

Rule 33 allows a defendant to move to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A Rule 33 Motion may be granted "if after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'" *United States v. Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (quoting *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994)).

In *Brady v. Maryland*, the Supreme Court held that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83, 87 (1963). To establish a *Brady* claim, a defendant must show (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense. *Id.*; *Hooks v. Workman*, 689 F.3d 1148, 1179 (10th Cir. 2012) (quoting *United States v. Wooten*, 377 F.3d 1134, 1142 (10th Cir. 2004)). The first element is not met if the evidence was made available

at trial. *United States v. Brooks*, 727 F.3d 1291, 1300 n.7 (citing *United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir. 2008)).

Under the *Brady* framework, the third element of materiality is met "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Ahrensfield*, 698 F.3d 1310, 1319 (10th Cir. 2012) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id.* To make this determination, courts evaluate the withheld evidence in light of the entire record, but "the mere possibility that evidence is exculpatory does not satisfy" the standard. *Id.* (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1518 (10th Cir. 1995)). Impeachment evidence and exculpatory evidence fall within the *Brady* rule, and the same framework applies. *Bagley*, 473 U.S. at 676.

### A. Failure to Disclose Witness Robert Sanger's Recollection

Ms. Smith first argues that the government committed prosecutorial error when it failed to disclose that its witness, Robert Sanger, had a traumatic brain injury which caused memory loss. Def.'s Mot. [ECF 194] at 13. Robert Sanger could not remember prior statements he made to the FBI and agency employees from the Oklahoma Department of Human Services due to his traumatic brain injury. *Id.* Counsel for Ms. Smith, Mr. Gifford, complained of this issue at the trial, moving to introduce extrinsic evidence under Rule 806 of the Federal Rules of Evidence. *See* Trial Tr. [ECF 201] at 456–67.

The government argues that the prosecution did not suppress notice of Robert Sanger's traumatic brain injury and subsequent memory issues because the information was disclosed during his direct examination. Pl.'s Resp. [ECF 207] at 11. The prosecution does not suppress evidence under *Brady* when the evidence is disclosed at trial. *Smith*, 534 F.3d at 1223. The

8 – OPINION AND ORDER

government further argues that even if I regard this information as suppressed, the element of materiality is not met. According to the government, Ms. Smith's claim that she would have been better prepared if she received this information earlier is not sufficient to create reasonable doubt as to the outcome of the trial. Pl.'s Resp. [ECF 207] at 11–12.

I find that the prosecution did not suppress information about Robert Sanger's memory. The government began its direct examination of Robert Sanger by asking him about his brain injury and its effect on his memory. Trial Tr. [ECF 200] at 182. This means that Ms. Smith received the information before Mr. Gifford's cross-examination of Robert Sanger. This disclosure appears to be complete because throughout his time on the witness stand, Robert Sanger failed to recall statements he made to the FBI or state employees, even after attempts to refresh his recollection. Moreover, it appears that Robert Sanger's recollection was worse at the trial than what the prosecution thought it would be, based on pretrial meetings. Trial Tr. [ECF 201] at 462. Every element of the *Brady* standard must be met, so Ms. Smith's failure to meet the first element is dispositive. *See Hooks*, 689 F.3d at 1179.

As a secondary matter, Ms. Smith argues that the prosecution suppressed the fact that Robert Sanger's memory was better a few days before the trial. Def.'s Mot. [ECF 194] at 14. The *Brady* test is unconcerned with whether the prosecution acted in good faith or bad faith. *Brady*, 373 U.S. at 87. That said, the prosecution cannot suppress information it does not have. The prosecution could not have known that Robert Sanger's recollection deteriorated until after his testimony was given at the trial. So, again, the first element of *Brady* is not met.

### B. Failure to Disclose Promise Not to Prosecute Witness Allison Smith

Ms. Smith next argues that the government committed prosecutorial error when it failed to disclose that it promised its witness, Allison Smith, that she would not be prosecuted for child

abuse or neglect. Def.'s Mot. [ECF 194] at 16–17. The government responds that it did not make any promises to Allison. Pl.'s Resp. [ECF 207] at 12.

I find that there is no evidence the government made promises not to prosecute Allison. When Ms. Stinnett cross-examined Allison, Allison said that the government did not "specifically tell" her that she would not be charged with a crime. Trial Tr. [ECF 200] at 368–69. Because no information was suppressed, there is no *Brady* violation.

### C. Failure to Disclose Reports Used by Expert Witness Dr. Lauren Conway

Ms. Smith's next argument is that the government improperly asked its expert witness, Dr. Lauren Conway, to testify to statements in reports that were undisclosed. Def.'s Mot. [ECF 194] at 18–19. During trial, counsel for Ms. Smith asked for a sidebar to question the use of a report during Dr. Lauren Conway's direct examination. Trial Tr. [ECF 201] at 589. The prosecution responded that the report was provided in discovery. *Id.* Here, the government writes that it produced all reports on which Dr. Conway based her testimony to Ms. Smith in discovery. Pl.'s Resp. [ECF 207] at 13. The government offers to provide "a bates stamped copy of the report in question" to prove this fact. Because Ms. Smith did not file a Reply, I lack information about which report or what sort of evidence Ms. Smith believes was undisclosed. Without this information, this argument provides no basis for me to grant Ms. Smith's motion.

### D. Denial of the Right to Present a Defense

Finally, Ms. Smith argues that the defense's ability to introduce Allison's TikToks and journals was improperly restricted at the trial. Def.'s Mot. [ECF 194] at 19–20. The government responds that rulings in accord with the Rules of Evidence do not violate a defendant's due process rights. Pl.'s Resp. [ECF 207] at 13–14.

The Fifth and Sixth Amendments grant defendants the right to present a defense. *United States v. Tapaha*, 891 F.3d 900, 905 (10th Cir. 2018). However, defendants are still subject to the rules of evidence and procedure. *Id.* To prevail on her constitutional claim, Ms. Smith must show that the district court abused its discretion in excluding the evidence and that the evidence "was of such an exculpatory nature that its exclusion affected the trial's outcome." *Id.* (quoting *United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005)).

1. **TikTok Videos**

During his cross-examination of Allison, Mr. Gifford sought to use Allison's TikTok account for impeachment purposes. The government objected when Mr. Gifford attempted to show Allison her TikTok account. Trial Tr. [ECF 200] at 335. In response, Mr. Gifford framed his approach as though he were trying to refresh Allison. I ruled that Mr. Gifford could not refresh Allison's recollection because Allison gave affirmative answers to his questions about her TikTok account and did not say she could not remember. *Id.* at 337–38. This ruling was not error because an attorney can not use a document to refresh a witness's recollection when the witness makes a clear denial and does not indicate she needs to be refreshed. *See* Fed. R. Evid. 612. Additionally, a cross-examiner is generally bound by the answers a witness gives about collateral matters. *Ortiz v. Yates*, 704 F.3d 1026, 1038 (9th Cir. 2012) ("[A]s a general matter, a witness may not be contradicted by extrinsic evidence on a collateral matter.").

2. **Journals**

Broadly speaking, Mr. Gifford sought to use Allison's journals for two purposes: impeachment and to establish that Allison committed the abuse against H.M. The first objection to Mr. Gifford's use of Allison's journals came when Mr. Gifford tried to authenticate the first journal. Trial Tr. [ECF 200] at 359–60. Allison claimed it was not her journal three times. I

sustained the government's objection and directed Mr. Gifford to ask Allison about a different journal. *Id.* at 360–61. This ruling was not error because Mr. Gifford asked Allison about the first journal in several different ways and was not getting a different answer.

Next, the government made a relevance objection. *Id.* at 363. Mr. Gifford was asking Allison about her journal entries, and in one entry Allison explained that she was excited to ride a horse. I sustained the relevance objection. *Id.* This was not error because the testimony strayed outside Mr. Gifford's purpose, which was showing that Allison did not want to go back to her dad.

Before the jury was brought in the next day, I allowed time for the parties to put various arguments on the record. Mr. Gifford argued that he was not able to reach all the journal entries that he wanted to during cross-examination. Trial Tr. [ECF 201] at 467, 475. Mr. Gifford requested to re-call Allison "to go through all the pages of her prior statements with her." *Id.* at 475. He explained that one of the pages in the first journal had Allison's name on it, but he was not able to reach it because I gave him "direction to move on" or to "end the questioning." *Id.* at 475–76; *see* Trial Tr. [ECF 200] at 360. My direction was not error because prior to being told to move on, Mr. Gifford had multiple opportunities to authenticate the journal and did not ask Allison to see her name written in it. Trial Tr. [ECF 201] at 476.

Mr. Gifford next argued that he wanted to get all the journals admitted into evidence for the jury to review because one of Ms. Smith's theories is that Allison abused H.M. *Id.* at 476–77. I correctly held that Mr. Gifford cannot admit a journal that Allison did not authenticate. *See* Fed. R. Evid. 901(a). I also decided to excuse Allison "if the only reason" to re-call her "is to get her to try to do a better job of authenticating that first journal." Trial Tr. [ECF 201] at 479. No harm was done by this decision because Mr. Gifford later successfully authenticated the journals through Ms. Smith's testimony. *Id.* at 478; *see also* Trial Tr. [ECF 202] at 760–61.

12 – OPINION AND ORDER

The next argument arose when Mr. Gifford moved to admit Allison's five journals during Ms. Smith's testimony. Trial Tr. [ECF 202] at 761. The government objected to foundation and relevancy to prevent the entire contents of all five journals getting admitted. *Id.* I overruled as to foundation. *Id.* The outstanding issues were hearsay and relevancy. Mr. Gifford first argued that the rule against hearsay did not prevent admission of the journals because he was using them as incriminating evidence that Allison committed the abuse. *Id.* at 762. I agreed that direct evidence that someone else committed the charged crimes would evade the hearsay objection. *Id.* at 764. On this point, then, Mr. Gifford offered select pages of the journals:

- Journal 9-A – Entry repeating the phrase "Today, I will not lose my temper at my sister."
- Journal 9-C – Reference to H.M. where Allison describes H.M. coming into her life.
- Journal 9-C – "Sorry, we have been very, very busy. [H.M.] has had a hard time. She has had to go to the Crabtrees, people she lived with, who have beaten her black and blue. They have hurt her."
- Journal 9-C – Allison says H.M. is spoiled, indicating potentially growing resentment or jealousy.
- Journal 9-C – Allison starts to make statements how her mother would rather have H.M. than her, again indicating potential resentment. Allison also complains that H.M. got more Christmas presents.
- Journal 9-D – Allison complains about having to baby-sit H.M.

I then said the following: "Every good older sister in America writes in her journal that she has to be more patient with her younger sister. Every decent older sibling in the world is jealous of younger siblings. All siblings wish they got more Christmas presents, so most of that won't help you." *Id.* at 769. I admitted only the reference to the Crabtrees. *Id.*

There are two potential grounds to deny admission of the above journal entries. First is relevance, and the second is hearsay. As noted above, direct evidence that someone else committed the charged crimes would evade the rule against hearsay, so both reasons effectively collapse into the same inquiry—whether the portions were relevant. Evidence is relevant if "it has any tendency

13 – OPINION AND ORDER

to make a fact more or less probable than it would be without the evidence" and the fact is material. Fed. R. Evid. 401. Here, the fact that Allison or another party abused H.M. would be material. My quote above sums up why I did not find the journal entries to be probative of whether Allison abused H.M.

To prevail on her claim, Ms. Smith must show that I abused my discretion in excluding the evidence, and that the evidence "was of such an exculpatory nature that its exclusion affected the trial's outcome." *Tapaha*, 891 F.3d at 905 (quoting *Dowlin*, 408 F.3d at 659). The abuse of discretion standard is deferential. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). A district court's decision to exclude evidence should not be reversed "unless the ruling is manifestly erroneous." *United States v. Cordoba*, 194 F.3d 1053, 1056 (9th Cir. 1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)). Ms. Smith has not shown that my rulings were an abuse of discretion. Furthermore, because none of the excluded evidence directly showed that Allison was physical with H.M., I do not find that it "was of such an exculpatory nature that its exclusion affected the trial's outcome." *Tapaha*, 891 F.3d at 905 (quoting *Dowlin*, 408 F.3d at 659).

## CONCLUSION

For the reasons given above, I DENY the Motion for Dismissal, DENY the Rule 29 Motion for Judgment of Acquittal, and DENY the Rule 33 Motion for New Trial.

IT IS SO ORDERED.

DATED this 30th day of November, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge